# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL MESSINA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 C 00405 |
| | ) | |
| VILLAGE OF VILLA PARK, ILLINOIS, | ) | Judge John J. Tharp, Jr. |
| Village Manager RICHARD KEEHNER, JR., | ) | |
| Deputy Chief ROBERT BUDIG, Sergeant | ) | |
| DANIEL McCANN, Village Trustee JOHN | ) | |
| DAVIS, and Village Trustee ROBERT TAGLIA, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

A paradigmatic fact pattern in federal civil rights law suits involves a plaintiff who alleges injury at the hands of police officers who disregard the plaintiff's constitutional rights in the course of an arrest while other officers fail to intervene to prevent the violations. In this civil rights case, however, the paradigm is largely inverted: the plaintiff is a police officer who alleges that he was wronged when other police officers (and other municipal officials) trumped up allegations that he had handled an arrest inappropriately and injured the arrestee in the process. The plaintiff, Daniel Messina ("Messina"), brought this case against his former employer, the Village of Villa Park, Illinois (the "Village"), and five of its municipal officials: Richard Keehner, Jr. ("Keehner"), the Village Manager, Deputy Chief of Police Robert Budig ("Budig"), Sergeant Daniel McCann ("McCann"), and Village Trustees John Davis ("Davis") and Robert Taglia ("Taglia").[1] Messina's complaint seeks relief under 42 U.S.C. § 1983 based on the

---

[1] Messina initially sued the individual defendants in both their individual and official capacities, but has withdrawn his official capacity claims against them. *See* Response, Dkt. 21, at 15.

1

following federal law theories: that he was deprived of his property interest in continued employment in violation of procedural due process (Count I), that he was deprived of his liberty interest in seeking future employment in violation of procedural due process (Count II), that the individual defendants engaged in a conspiracy to violate his procedural due process rights (Count VI), and that the Village engaged in a custom, practice, or policy of denying police officers procedural due process (Count VIII). Messina also brings state law claims for defamation (Count III), tortious interference (Count IV), and intentional infliction of emotional distress (Count V), as well as indemnification by the Village (Count VII). The defendants move to dismiss the complaint on the ground that it fails to state a claim upon which relief can be granted. For the reasons stated below, the Court grants the defendants' motion.

## BACKGROUND

The Village hired Messina as a probationary police officer in November 2010.[2] On December 26, 2011, Messina arrested a suspect in connection with a reported theft ("the December arrest"). When he sought to book the suspect at the Village police station, defendant McCann told him to release her without charges. At some point during the next few weeks, McCann told defendants Budig and Keehner that in the course of the December arrest, Messina had failed to check the license plate number of the suspect's vehicle before arresting her and had injured the suspect by dragging her down six stairs. According to Messina, the information about Messina's conduct in connection with the December arrest was false, was known to McCann to be false, and was also known by Budig and Keehner to be false. Nevertheless, on or around

---

[2] In reviewing a motion to dismiss, the Court accepts the plaintiff's factual allegations as true and construes all reasonable inferences in favor of the plaintiff. *Gessert v. United States*, 703 F.3d 1028, 1033 (7th Cir. 2013). The factual background is therefore drawn from the complaint, Dkt. 1, and summarized with this standard in mind.

January 17, 2012, Budig told the attorney for the suspect involved in the December arrest that Messina had violated police department regulations and would be disciplined.

Messina's employment with the Village ended on January 19, 2012. On that date, Budig met with Messina and informed him that he was not meeting police department standards. In ostensible support of this determination, Budig stated that Messina had failed to check the suspect's license plate and had injured the suspect by dragging her down the stairs during the December arrest, even though Budig knew this information to be false. At the end of their meeting, Budig gave Messina the choice of resigning or being immediately discharged; Messina opted to resign.[3]

On unspecified dates following this meeting, Budig repeated his statements about Messina's conduct during the December arrest to other Villa Park employees and to members of the public. In addition, on or around March 4, 2012, defendant Davis posted a message on the Village's blog indicating that two probationary officers had recently been discharged for failing to meet the Village's standards; the post did not name the officers. Later on March 4, 2012, Defendant Taglia posted a message on the same blog using the screen name "fishbones"; his message mentioned Messina's name, referred to him as a "nut job," and appended a copy of a federal lawsuit brought by the suspect Messina had arrested in December.

## DISCUSSION

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "'A claim has facial

---

[3] Although the complaint states that Messina was "effectively discharged," Dkt. 1, ¶ 18, the Court understands this to mean that he chose the option of resigning. This interpretation is confirmed by Messina's memorandum in response to the defendants' motion to dismiss. *See* Response, Dkt. 21, at 1 ("Plaintiff . . . was forced to resign . . . .").

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). Although the Court must accept all of the plaintiff's factual allegations as true when reviewing the complaint, conclusory allegations merely restating the elements of a cause of action do not receive this presumption. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557).

### A. Due Process Claims (Counts I and II)

Section 1983 creates a cause of action for constitutional violations committed by persons acting "under color of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. To maintain a Section 1983 due process action, a plaintiff must establish that a state actor has deprived him of a constitutionally protected liberty or property interest without due process of law. *See Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013); *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010).[4]

#### 1. Property Interest Claim (Count I)

Messina alleges that he was deprived of his property interest in continued employment with the Village without due process, in violation of the Fifth and Fourteenth Amendments. Although the general rule in Illinois is that probationary public employees do not have a property interested in continued employment, a municipality can choose to enact rules and regulations to "'provide greater protection for its employees.'" *Redd v. Nolan*, 663 F.3d 287, 296 (7th Cir. 2011) (quoting *Lewis v. Hayes,* 152 Ill. App. 3d 1020, 1024, 505 N.E.2d 408, 411 (1987)). "'For

---

[4] It is undisputed that at all times relevant to this case, the individual defendants were employees of the Village and were acting within the scope of their employment and under color of law.

4

such a rule or regulation to be effective, however, it must be a 'clear policy statement.'" *Id.* (quoting *Faustrum v. Bd. of Fire and Police Comm'rs of Vill. of Wauconda*, 240 Ill. App. 3d 947, 951, 608 N.E.2d 640, 643 (1993)); *see also Krecek v. Bd. of Police Comm'rs of La Grange Park*, 271 Ill. App. 3d 418, 424, 646 N.E.2d 1314, 1319 (1995) ("Absent a clear statement to the contrary, probationary police officers have no right to continued employment under the Illinois Municipal Code.").

Messina premises his due process property interest claim on the theory that Section 19-103 of the Village's Municipal Code provides probationary police officers with a property interest in continued employment during their probationary period, unless they are terminated following a determination by the board of fire and police commissioners.[5] Section 19-103 states:

> (a) A two-year probationary period for all police department recruits is hereby required.
> . . . .
> (c) The review and determination of successful completion of the probationary period shall be determined by the board of fire and police commissioners pursuant to its rules and regulations.
> (d) If the board of fire and police commissioners determines that the police department recruit has not successfully performed his/her probationary period, the recruit's period of employment shall be terminated.
> . . . .

---

[5] The defendants argue that the Village's collective bargaining agreement with the police union (the "CBA"), which the defendants' attached to their motion to dismiss, should be considered in ruling on the motion. Although the CBA appears to be highly relevant, *cf. Tobias v. Vill. of Villa Park, Ill.*, No. 13-CV-1475, 2014 WL 3748637, at *2-3 (N.D. Ill. July 30, 2014), the Court cannot consider the CBA at this juncture because the complaint did not reference the CBA, even indirectly. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint *and* are central to her claim." (emphasis added)); *see also Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002) (quoting *Venture Assocs.*, 987 F.2d at 431). Contrary to the defendants' argument, the Court cannot consider the CBA solely because it proves the plaintiff's claim has no merit; that is not the standard set forth in *Tierney v. Vahle,* 304 F.3d 734, 738 (7th Cir. 2002), on which the defendants purport to rely.0

(f) The board of fire and police commissions should also have the authority to extend the probationary period.

Section 19-103 is not a "clear policy statement" creating a property interest in continued employment during a recruit's probationary period. Rather, the ordinance outlines procedures to be followed *at the conclusion of* the required probationary period; it does not address termination *during* the probationary period.[6] *Cf. Redd*, 663 F.3d at 297 (finding that an employment document stating that the plaintiff could be "terminated for cause" during probation was not a "clear policy statement" that probationary employees could *only* be terminated for cause). "The clear statement requirement simply is not satisfied by an inference that lawyers and judges might draw from at best ambiguous and incomplete language." *Id.* Section 19-103 thus does not alter the general Illinois rule that probationary public employees have no property interested in continued employment.[7] Messina's reading is simply not supported by the text of the ordinance. Section 19-103 prescribes a procedure for the review of probationary officers who complete two years of probationary employment, in order to assess whether they should be accorded non-probationary status. It does not purport to bar supervisory officials from terminating the employment of a probationary officer before the expiration of the two-year period of probation

---

[6] *Lewis v. Hayes,* 152 Ill. App. 3d 1020, 505 N.E.2d 408 (1987), the only case the plaintiff cites in support of his position, is distinguishable on this basis. In *Lewis,* the municipality had adopted a policy that provided additional protection to probationary police officers terminated at any time during their probationary employment. *Id.* at 1023-24, 505 N.E.2d at 411. Villa Park's ordinance, by contrast, expressly applies upon "completion of the probationary period."

[7] Although Judge Coleman's recent decision involving Section 19-103 briefly summarized the ordinance as providing "the procedure for terminating a probationary police officer," *Tobias*, 2014 WL 3748637, at *2, that description appeared only in the background section of the opinion. The property interest due process claim in the case was decided on other grounds. *See id.* at *2-3 (finding that a collective bargaining agreement superseded the provisions of Section 19-103). Aside from *Tobias*, Section 19-103 has not been discussed or construed by any other court.

where they reach a determination that such an officer is not meeting required standards. Accordingly, Count I is dismissed with prejudice.[8]

### 2. Liberty Interest Claim (Count II)

Messina alleges that as a result of his discharge and the public comments made about his job performance, he was deprived of his liberty interest in seeking future employment without due process, in violation of the Fifth and Fourteenth Amendments. "An occupational-liberty claim may arise when, after an adverse employment action, a public employer stigmatizes the employee by making public comments impugning his good name, honor, or reputation or imposes a stigma that forecloses other employment opportunities." *Palka v. Shelton*, 623 F.3d 447, 454 (7th Cir. 2010) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 573-74 (1972)). To state such claim, a plaintiff must show that "(1) he was stigmatized by the defendant's conduct, (2) the stigmatizing information was publicly disclosed and (3) he suffered a tangible loss of other employment opportunities as a result of public disclosure." *Townsend v. Vallas*, 256 F.3d 661, 669-70 (7th Cir. 2001); *see also Head v. Chi. Sch. Reform Bd. of Trs.*, 225 F.3d 794, 801 (7th Cir. 2000). "To demonstrate a loss of employment opportunities, the plaintiff must allege a 'permanent exclusion' or 'protracted interruption' from the individual's chosen field because of the defendant's actions." *Bryant v. Gardner*, 545 F. Supp. 2d 791, 802 (N.D. Ill. 2008) (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 456 (7th Cir. 1992)). The essence of an occupational-liberty claim is that public disclosure of the circumstances of the discharge had the effect of "'blacklisting the employee from employment in comparable jobs'" and "mak[ing] it

---

[8] Count I also warrants dismissal on additional grounds as to defendants Davis, Taglia, and the Village, since Messina has conceded that the Village is not subject to respondeat superior liability under Section 1983, *see* Response, Dkt. 21, at 15, and has not alleged that Davis or Taglia had any direct or indirect role in his termination. *See Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011) ("Section 1983 creates liability only for a defendant's personal acts or decisions.").

virtually impossible for the employee to find new employment in his chosen field." *Townsend*, 256 F.3d at 670 (quoting *Colaizzi v. Walker*, 812 F.2d 304, 307 (7th Cir. 1987)).

In the instant case, the Court need only focus on the third element of an occupational-liberty claim because Messina has failed to plead any facts plausibly supporting his claim that he has experienced the requisite loss of employment opportunities. The complaint states that as a result of the defendants' conduct, Messina has "los[t] valuable job opportunities," Dkt. 1, ¶ 36, and his "future job prospects in the peace officer field have been irreparably harmed," *id.* ¶¶ 26, 39. These statements are entirely conclusory in nature and fall well short of plausibly alleging that Messina has been blacklisted or that it has been virtually impossible for him to find new work in his field because of the alleged public comments. At most, they indicate only that Messina has not obtained another law enforcement position—a fact that could be due to any number of reasons, such as a failure to apply for other positions (or a shortage of such positions), or Messina's qualifications, or the fact of his termination from the Villa Park police department (as opposed to the alleged comments about the reasons for his termination), just to name a few. *Cf., e.g.*, *Wroblewski*, 965 F.2d at 457 (affirming dismissal of an occupational-liberty claim with prejudice where the plaintiff failed to allege "that he was excluded from his profession on a permanent or protracted basis"); *Parker v. Ill. Human Rights Comm'n*, No. 12 C 8275, 2013 WL 5799125, at *7 (N.D. Ill. Oct. 25, 2013) (dismissing an occupational-liberty claim with prejudice where the plaintiff failed to allege "that the stigmatizing remarks made it virtually impossible for her to find new employment, and her allegations [did] not plausibly support such an inference"); *Blackout Sealcoating, Inc. v. Peterson*, 894 F. Supp. 2d 1067, 1070 (N.D. Ill. 2012) (granting the defendants' motion to dismiss where "the factual allegations in the complaint [were] insufficient to support plaintiffs' claim that they became "virtually unemployable" in their chosen field"),

8

*aff'd*, 733 F.3d 688 (7th Cir. 2013); *Ellis v. City of Chicago*, 272 F. Supp. 2d 729, 734 (N.D. Ill. 2003) (granting the defendant's motion to dismiss where the plaintiff "allege[d] damage to her reputation" but "only speculate[d] as to her prospects for future employment"). Count I is therefore dismissed; the dismissal of this claim, however, is without prejudice as to defendants Budig, Taglia, and Davis because Messina has not previously been given an opportunity to remedy the deficiencies in the allegations supporting this claim and could, at least in theory, do so. The dismissal is with prejudice as to the remaining defendants since Messina has conceded that the Village is not subject to respondeat superior liability under Section 1983, *see* Response, Dkt. 21, at 15, and has not alleged that Keehner or McCann made any stigmatizing comments about Messina to the public.

      **B.**      **Conspiracy Claim (Count VI)**

Messina alleges that the individual defendants reached an agreement to deprive him of his procedural due process rights. "[T]o establish Section 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) individuals reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individuals were willful participants in joint activity." *Marshbanks v. City of Calumet City*, No. 13 C 2978, 2013 WL 6671239, at *2 (N.D. Ill. Dec. 18, 2013) (citing *Lewis v. Mills*, 677 F.3d 324, 333 (7th Cir. 2012)). "[C]onspiracy is not an independent basis of liability in § 1983 actions." *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). A Section 1983 conspiracy claim can only succeed if there is a valid underlying constitutional claim. *See Reynolds v. Jamison*, 488 F.3d 756, 764 & n.4 (7th Cir. 2007).

As discussed above, Messina has failed to state a claim for a violation of his constitutional rights. He thus has no basis to support a Section 1983 conspiracy claim. *See Hill v. City of Chicago*, No. 13 C 4847, 2014 WL 1978407, at *8 (N.D. Ill. May 14, 2014) ("[B]ecause

9

the underlying due process and unlawful seizure claims on which his federal conspiracy claim are based have been dismissed, [the plaintiff's] federal conspiracy claim . . . must also be dismissed." (citing *Reynolds*, 488 F.3d at 764)); *Miles v. McNamara*, No. 13 C 2395, 2014 WL 948884, at *7-8 (N.D. Ill. Mar. 11, 2014) (dismissing the plaintiff's Section 1983 conspiracy claim with prejudice because he "failed to successfully allege any constitutional violations"). Accordingly, Count VI is dismissed with prejudice.

### C. *Monell* Policy Claim (Count VIII)

Messina alleges that the Village engaged in a custom, practice, and policy of denying probationary policy officers due process by discharging them without notice and an opportunity for a hearing. Under *Monell*, a municipality can be held liable for the actions of a tortfeasor it employs "if the tortfeasor inflicts a constitutional injury on the plaintiff in the execution of the government's policy or custom." *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). Importantly, "'there can be no municipal liability based on an official policy under *Monell* if the policy did not result in a violation of [a plaintiff's] constitutional rights.'" *Id.* at 424-25 (quoting *Houskins v. Sheahan*, 549 F.3d 480, 493 (7th Cir. 2008)) (alteration in original).

As discussed above, Messina has failed to state a claim for a violation of his constitutional rights. He thus has no basis to support a *Monell* claim. *See id.* at 424 ("[The plaintiff's] *Monell* claim fails because he did not suffer a constitutional injury . . . ."); *see also D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 687 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1308 (2014) ("[T]he complaint fails to state an equal-protection claim against [the individual defendants]. With that conclusion, the *Monell* claim against [the] County necessarily fails."). In addition, Messina has failed to adequately plead a *Monell* claim because he alleges no facts

suggesting that his discharge was attributable to a Village custom or policy. *Cf. McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (affirming dismissal of the plaintiff's *Monell* claim where the plaintiff failed to plead sufficient factual content). For these reasons, Count VIII is dismissed with prejudice.

### D. State Claims (Counts III, IV, V, and VII)

Because Messina has failed to state viable claims for constitutional violations and municipal liability pursuant to Section 1983, the Court declines to exercise supplemental jurisdiction over his state claims for defamation, tortious interference, intentional infliction of emotional distress, and indemnification. Accordingly, those claims are dismissed without prejudice.

\*     \*     \*

For the reasons stated above, Messina's federal claims against the defendants are dismissed with prejudice, except for the occupational-liberty due process claim, which is dismissed without prejudice as to defendants Budig, Taglia, and Davis and with prejudice as to the remaining defendants. In view of these dismissals, the Court declines to exercise its supplemental jurisdiction over the plaintiff's state claims, which are also dismissed without prejudice and which may be reasserted if the plaintiff files an amended complaint asserting a federal claim.

Date: September 26, 2014

John J. Tharp, Jr.
United States District Judge