IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL MESSINA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 13 C 00405 |
| VILLAGE OF VILLA PARK, ILLINOIS, ) | |
| Village Manager RICHARD KEEHNER, JR., ) | Judge John J. Tharp, Jr. |
| Deputy Chief ROBERT BUDIG, Sergeant ) | |
| DANIEL McCANN, Village Trustee JOHN ) | |
| DAVIS, and Village Trustee ROBERT TAGLIA, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Daniel Messina ("Messina") is a former municipal police officer who alleges that he was wronged when other municipal officials trumped up allegations that he had handled an arrest inappropriately. He asserts claims under 42 U.S.C. § 1983 and state law against his former employer, the Village of Villa Park, Illinois ("Villa Park"), and five of its municipal officials: Village Manager Richard Keehner, Jr. ("Keehner"), Deputy Chief of Police Robert Budig ("Budig"), Sergeant Daniel McCann ("McCann"), and Trustees John Davis ("Davis") and Robert Taglia ("Taglia"). The defendants have moved to dismiss the current First Amended Complaint (the "Complaint") for failure to state a claim pursuant to Rule 12(b)(6). Dkt. 36. For the reasons stated below, the Court grants the defendants' motion.

### FACTUAL BACKGROUND

Villa Park hired Messina as a probationary police officer in November 2010.[1] On

---

[1] In reviewing a motion to dismiss under Rule 12(b)(6), the Court may consider: (1) the complaint and any documents attached to it, (2) documents attached to the motion to dismiss that are critical to the complaint and referred to in it, (3) additional facts set forth in the response to

December 26, 2011, Messina arrested a suspect in connection with a reported theft ("the December arrest"). When he sought to book the suspect at the Villa Park police station, defendant McCann told him to release her without charges. At some point during the next few weeks, McCann told defendants Budig and Keehner that in the course of the December arrest, Messina had failed to check the license plate number of the suspect's vehicle before arresting her and had injured the suspect by dragging her down six stairs. According to Messina, McCann's description of Messina's conduct during the December arrest was false, was known by McCann to be false, and was also known by Budig and Keehner to be false. Nevertheless, on or around January 17, 2012, Budig told the attorney for the suspect involved in the December arrest that Messina had violated police department regulations and would be disciplined.

Messina's employment with Villa Park ended on January 19, 2012. On that date, Budig met with Messina and informed him that he was not meeting police department standards. In ostensible support of this determination, Budig stated that during the December arrest Messina had failed to check the suspect's license plate and had injured the suspect by dragging her down some stairs, even though Budig knew those allegations to be false. At the end of their meeting, Budig gave Messina the choice of resigning or being immediately discharged; Messina opted to resign.[2] Messina did not receive notice or a hearing prior to the termination of his employment.

---

the motion or in any documents attached to the response, as long as those additional facts are consistent with the allegations in the complaint, and (4) information that is subject to proper judicial notice (such as public records). *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). When considering these materials, the Court accepts the plaintiff's factual allegations as true and construes all reasonable inferences in favor of the plaintiff. *Gessert v. United States*, 703 F.3d 1028, 1033 (7th Cir. 2013). The factual background is therefore summarized with this standard in mind and drawn primarily from the Complaint, Dkt. 32.

[2] Although the Complaint states that Messina was "effectively discharged," Compl., Dkt. 32, ¶ 18, the Court understands this to mean that he chose the option of resigning. *See* Mem. Op., Dkt. 31, at 3 n.3 (expressing the same understanding about the allegations in the original

On unspecified dates after January 19, 2012, Budig repeated his statements about Messina's conduct during the December arrest to other Villa Park employees and to members of the public. In addition, on March 4, 2012, defendant Davis posted a message on Villa Park's blog in response to questions about recent terminations by the police department; his message indicated that two probationary officers had been discharged for failing to meet Villa Park's standards, but it did not name the officers. Later on March 4, 2012, defendant Taglia posted a message on the same blog using the screen name "fishbones"; his message mentioned Messina's name, included a copy of a lawsuit filed against Messina by the suspect involved in the December arrest, and concluded by describing Messina as a "nut job." According to Messina, the lawsuit included within Taglia's blog contained false allegations of police brutality.

Since the events described above, Messina has applied to approximately 15-20 police officer positions in the greater Chicago area but has not received any offers of employment. Only one employer—the Village of Prospect Heights—expressed interest in response to his application; that employer ultimately declined to hire him after conducting a background check and speaking with individuals at Villa Park.

**PROCEDURAL BACKGROUND**

Messina filed this lawsuit on January 17, 2013. His original complaint sought relief under § 1983 based on the following federal law theories: that he was deprived of his property interest in continued employment in violation of procedural due process (Count I), that he was deprived of his liberty interest in seeking future employment in violation of procedural due process (Count

---

complaint). This interpretation was confirmed by Messina's response to the defendants' motion to dismiss the original complaint, *see* Resp., Dkt. 21, at 1 (stating that Messina "was forced to resign"), and has been further confirmed by Messina's failure to offer any new factual allegations relevant to the discharge/resignation distinction in his filings since the Court made this understanding explicit in its prior memorandum opinion.

II), that the individual defendants engaged in a conspiracy to violate his procedural due process rights (Count VI), and that Villa Park engaged in a custom, practice, or policy of denying police officers procedural due process (Count VIII). He also asserted state law claims for defamation (Count III), tortious interference (Count IV), and intentional infliction of emotional distress (Count V), as well as respondeat superior and indemnification by Villa Park (Count VII).[3]

After the defendants moved to dismiss the original complaint pursuant to Rule 12(b)(6), the Court dismissed three of the federal claims (Counts I, VI, and VIII) with prejudice in their entirety; dismissed the remaining federal claim (Count II) without prejudice as to defendants Budig, Taglia, and Davis and with prejudice as to all other defendants; and dismissed the state law claims (Counts III, IV, V, and VII) without prejudice.[4] Mem. Op. & Order, Dkt. 31. Messina subsequently filed the current Complaint which amended some of the allegations within Count II, *see* Compl., Dkt. 32, at ¶ 40, and added new allegations relevant to that count in the

---

[3] The Court has jurisdiction over the § 1983 claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

[4] The Court takes this opportunity to clarify certain aspects of its prior memorandum opinion in this case. In that opinion, the Court's stated reason for dismissing the conspiracy claim (Count VI) and the *Monell* policy claim (Count VIII) with prejudice was that Counts I and II failed to state a claim for a violation of Messina's constitutional rights. *See* Mem. Op. & Order, Dkt. 31, at 9-11. The Court now clarifies that Count VI was appropriately dismissed with prejudice because: (1) Count I failed to state a claim based on deprivation of a property interest in employment and was dismissed with prejudice, and (2) Messina's response to the motion to dismiss failed to argue that the complaint sufficiently pleaded a conspiracy with respect to the liberty interest deprivation alleged in Count II. *See* Resp., Dkt. 21, at 13-14 (arguing only that the complaint adequately alleged a conspiracy to "oust Messina from his position"). *See generally Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) (explaining that failure to respond to arguments raised in motion to dismiss results in waiver). Similarly, Count VIII was appropriately dismissed with prejudice to the extent that it asserted *Monell* liability for the constitutional violations alleged in Counts I and II that were dismissed with prejudice. The dismissal of Count VIII should have been without prejudice, however, to the extent that Messina asserted *Monell* liability for the constitutional violations alleged in Count II that were dismissed without prejudice. But since the instant opinion now dismisses the remainder of Count II with prejudice, *see infra*, the prior dismissal of the entirety of Count VIII with prejudice does not need to be revisited.

background facts section, *see* Compl., Dkt. 32, at ¶¶ 26-30. The Complaint reasserted all seven other claims from the original complaint without change (and without any acknowledgment that the Court had dismissed some of those claims with prejudice). *See* Resp., Dkt. 39, at 1 ("Messina has filed an Amended Complaint amending only Count II . . . . He has not amended any of his other claims.").

The defendants have now moved to dismiss the current Complaint pursuant to Rule 12(b)(6). Since the Court previously dismissed Counts I, VI, VIII, and part of Count II with prejudice, the defendants' motion and supportive filings address only the surviving claims. *See* Mtn. to Dismiss, Dkt. 36, at 1 n.1. The Court's discussion below likewise addresses only those claims.

## DISCUSSION

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). Although a court must accept all of the plaintiff's factual allegations as true when reviewing the complaint, conclusory allegations merely restating the elements of a cause of action do not receive this presumption. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557).

A.  **Occupational-Liberty Due Process Claim (Count II)**

Section 1983 creates a cause of action for constitutional violations committed by persons

acting "under color of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. Here, the Complaint alleges that as a result of public comments made by the defendants around the time Messina's employment with Villa Park ended, Messina was deprived of his liberty interest in seeking future employment without due process, in violation of the Fifth and Fourteenth Amendments. *See generally Palka v. Shelton*, 623 F.3d 447, 454 (7th Cir. 2010) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 573-74 (1972)) ("An occupational-liberty claim may arise when, after an adverse employment action, a public employer stigmatizes the employee by making public comments impugning his good name, honor, or reputation."). Since the Court previously dismissed Count II with prejudice with respect to all defendants other than Budig, Taglia, and Davis, *see* Mem. Op. & Order, Dkt. 31, at 9, the Court will consider only whether Count II states a claim against Budig, Taglia, or Davis.

To maintain a liberty-interest due process action, a plaintiff must establish that a state actor deprived him of a constitutionally protected liberty interest and that the deprivation occurred without the requisite due process.[5] *See Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013); *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010). In the context of an occupational-liberty claim, the due process required is the opportunity for a timely name-clearing hearing. *See Zellner v. Herrick*, 639 F.3d 371, 378 (7th Cir. 2011) (citing *Codd v. Velger*, 429 U.S. 624, 627 (1977)); *Ratliff v. City of Milwaukee*, 795 F.2d 612, 627 n.4 (7th Cir. 1986); *Perry v. F.B.I.*, 781 F.2d 1294, 1303-04 (7th Cir. 1986); *Endicott v. Huddleston*, 644 F.2d 1208, 1215-17 (7th Cir. 1980); *Ellison v. Aurora E. Sch. Dist. 131*, No. 08 C 3695, 2009 WL 884949, at *3-4 (N.D. Ill. Mar. 27, 2009). A plaintiff establishes that he suffered an occupational-liberty deprivation by

---

[5] It is undisputed that at all times relevant to this case, Budig, Taglia, and Davis were employees of Villa Park and were acting within the scope of their employment and under color of law.

6

showing that: (1) the defendant made a stigmatizing statement about the plaintiff in connection with an adverse employment action, (2) the defendant publicly disclosed that stigmatizing statement, and (3) public disclosure of the statement caused the plaintiff to lose other employment opportunities. *See Abcarian v. McDonald*, 617 F.3d 931, 941 (7th Cir. 2010); *Townsend v. Vallas*, 256 F.3d 661, 669-70 (7th Cir. 2001).

The stigmatizing element of an occupational-liberty deprivation requires the plaintiff to show that a public official made a false and defamatory statement indicating that the adverse employment action was taken for a reason that impugns the plaintiff's "moral character" or implies "dishonesty or other job-related moral turpitude." *Hedrich v. Bd. of Regents*, 274 F.3d 1174, 1183-84 (7th Cir. 2001); *see also Covell v. Menkis*, 595 F.3d 673, 677 (7th Cir. 2010); *Fenje v. Feld*, 398 F.3d 620, 627 (7th Cir. 2005). Notably, the challenged statement must be an assertion of fact; statements of opinion and other non-factual statements do not fulfill the stigmatizing element since they cannot be refuted at a name-clearing hearing. *Strasburger v. Bd. of Educ.*, 143 F.3d 351, 356 (7th Cir. 1998). As for the public-disclosure element, the plaintiff must show that a named defendant "disseminate[d] the stigmatizing comments in a way that would reach potential future employers or the community at large." *Palka*, 623 F.3d at 454; *see also Covell*, 595 F.3d at 678. Finally, the causation element requires the plaintiff to show that public disclosure of the circumstances of the adverse employment action had the effect of "'blacklisting [him] from employment in comparable jobs'" and "mak[ing] it virtually impossible for [him] to find new employment in his chosen field." *Townsend*, 256 F.3d at 670 (quoting *Colaizzi v. Walker*, 812 F.2d 304, 307 (7th Cir. 1987)).

The defendants argue that Messina has failed to adequately plead an occupational-liberty deprivation because the Complaint does not sufficiently allege: (1) that the statements by Budig,

Davis, and Taglia were stigmatizing; (2) that any stigmatizing statements by Budig, Davis, or Taglia were publicly disclosed; or (3) that any public disclosure of such statements has been the cause of Messina's failure to obtain work as a police officer. In responding to the defendants' arguments about the stigmatizing element, Messina argues only that the blog post by Taglia qualifies as stigmatizing. *See* Resp., Dkt. 39, at 7 (stating that defendants ignored Taglia's blog post in discussing this element and arguing that Taglia's comments qualify as stigmatizing). Similarly, in responding to the defendants' arguments about the public-disclosure element, Messina argues only that the statements by Davis and Taglia were disseminated to the community at large. *See* Resp., Dkt. 39, at 7 ("Messina alleges very public comments—two blog postings that were made to the public at large."). Since Messina has failed to respond to the defendants' arguments that the statements by Budig and Davis do not fulfill the stigmatizing element and that the statements by Budig were not publicly disclosed, the Court need not consider Count II further with respect to defendants Budig and Davis. *See generally Goodpaster*, 736 F.3d at 1075 (explaining that failure to respond to arguments raised in motion to dismiss results in waiver).

That leaves for consideration only the blog post by Taglia. Messina contends that two aspects of this post fulfill the stigmatizing element: (1) the police brutality allegations within the copy of the lawsuit included in the post, and (2) the comment describing Messina as a "nut job" at the end of the post. Messina argues that these statements falsely portrayed him as being incompetent, suffering from a mental illness, and having committed police brutality.

As an initial matter, suggestions of incompetence do not suffice to meet the stigmatizing element of an occupational-liberty deprivation. *Head v. Chi. Sch. Reform Bd. of Trs.*, 225 F.3d 794, 801 (7th Cir. 2000) ("[S]imply labeling an employee as being incompetent or otherwise

unable to meet an employer's expectations does not infringe the employee's liberty." (citing *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1348-49 (7th Cir. 1995))). Therefore, any implication in the blog post that Messina was incompetent as an employee does not qualify as stigmatizing for purposes of Messina's occupational-liberty claim.

In addition, the "nut job" comment does not fulfill the stigmatizing element because it is not a factual statement that could be refuted at a name-clearing hearing. *Cf. Manjarres v. Nalco Co.*, No. 09 C 4689, 2010 WL 918072, at *5 (N.D. Ill. Mar. 9, 2010) (finding statement that plaintiff was "crazy" to be non-factual because complaint did not plausibly suggest that it "referenced a medical diagnosis capable of verification rather than Defendants' opinion" or was "anything more than 'rhetorical hyperbole' or 'mere name calling'" (citing *Pease v. Int'l Union of Operating Eng'rs Local 150*, 208 Ill. App. 3d 863, 870, 567 N.E.2d 614, 619 (1991)); *Haywood v. Lucent Technologies, Inc.*, 169 F. Supp. 2d 890, 915 (N.D. Ill. 2001) (finding statement that plaintiff was "unstable" to be pure opinion that was not objectively verifiable), *aff'd,* 323 F.3d 524 (7th Cir. 2003). *See generally Strasburger*, 143 F.3d at 356. Moreover, even assuming that this comment could be read as stating that Messina had a mental illness, a statement that a person suffers from a medical condition does not impugn that person's "moral character" or implies "job-related moral turpitude." *See generally Hedrich*, 274 F.3d at 1183-84. Thus, the "nut job" comment in Taglia's blog post cannot support Messina's occupational-liberty claim.

The allegedly false police brutality allegations included in the post, however, are sufficient to fulfill the stigmatizing element.[6] Such allegations are factual in nature and have

---

[6] By including a copy of the lawsuit filed against Messina in the post, Taglia republished statements originally made by another. The Restatement provides that "one who repeats or otherwise republishes defamatory matter is subject to liability as if he had originally published

9

been found to impugn a law enforcement officer's moral character. *See Jackson v. Kansas Cnty. Ass'n Multiline Pool*, No. 03-4181-JAR, 2006 WL 963838, at *12 (D. Kan. Apr. 10, 2006) (deeming statements that plaintiff used excessive force and physically and verbally abused citizens to be stigmatizing); *Biggins v. City of Hernando*, No. CIV.A. 1:94CV263-D-O, 1995 WL 1945462, at *3 (N.D. Miss. Dec. 15, 1995) (denying summary judgment for defendant on stigmatizing element because "charges or conduct such as sexual harassment, harassment of citizens, and use of excessive force are of a type which could be said to blacken one's name"). Accordingly, Messina has sufficiently alleged the stigmatizing element of an occupational-liberty deprivation based on the police brutality allegations in Taglia's blog post.

Messina has also sufficiently alleged the public-disclosure element of an occupational-liberty deprivation, since publication of stigmatizing statements on an official website qualifies as public disclosure in this context. *See O'Gorman v. City of Chi.*, 777 F.3d 885, 891 (7th Cir. 2015) ("[T]he charges . . . were . . . publicly disclosed by the City in 2007 when the Inspector General's office posted it on its website where it remained for five years."); *see also D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, No. CIV.A. 03-1026MLC, 2007 WL 4554208, at *10-11 (D.N.J. Dec. 21, 2007) (involving allegation that "published statements on the [defendant's] website" were stigmatizing), *aff'd,* 552 F. App'x 110 (3d Cir. 2014).

Messina has not, however, sufficiently alleged the causation element of an occupational-

---

it." Restatement (Second) of Torts § 578 (1977). And although it is possible that a qualified privilege to republish the contents of a filed complaint might apply in these circumstances, the defendants have not asserted any such affirmative defense. *See generally Best v. City of Portland*, 554 F.3d 698, 700 (7th Cir. 2009) (suggesting that a district court can only raise an affirmative defense sua sponte when "a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous" (quoting *Walker v. Thompson,* 288 F.3d 1005, 1009 (7th Cir. 2002)) (internal quotation marks omitted)). Therefore, Taglia is subject to potential liability for reproducing the police brutality allegations in the lawsuit as if he had originally made those allegations.

liberty deprivation. In dismissing Count II of the original complaint, the Court noted:

> The complaint states that as a result of the defendants' conduct, Messina has "los[t] valuable job opportunities," Dkt. 1, ¶ 36, and his "future job prospects in the peace officer field have been irreparably harmed," *id.* ¶¶ 26, 39. These statements are entirely conclusory in nature and fall well short of plausibly alleging that Messina has been blacklisted or that it has been virtually impossible for him to find new work in his field because of the alleged public comments. At most, they indicate only that Messina has not obtained another law enforcement position—a fact that could be due to any number of reasons, such as a failure to apply for other positions (or a shortage of such positions), or Messina's qualifications, or the fact of his termination from the Villa Park police department (as opposed to the alleged comments about the reasons for his termination), just to name a few.

Mem. Op. & Order, Dkt. 31, at 8. The new allegations in the current Complaint address one of the Court's concerns; the Complaint asserts that Messina has applied to approximately 15-20 police officer positions since the termination of his employment. But the allegations in the Complaint do not plausibly suggest that Messina's failure to receive any offers of employment in response to those job applications was due to the police brutality allegations reproduced in Taglia's blog post. While the Complaint contains new allegations regarding causation, those allegations are, like the prior allegations, entirely conclusory in nature. *See* Compl., Dkt. 32, ¶ 30 ("On information and belief, Messina avers that he has not received any offers of employment . . . due to the facts and circumstances surrounding his separation from Villa Park, including but not limited to the stigmatizing public comments made by Defendants about him."); Compl., Dkt. 32, ¶ 40 ("On information and belief, Messina avers that as a result of the public stigmatizing comments made by Defendants, he has effectively been blacklisted in the police officer field of employment."); *cf. Blackout Sealcoating, Inc. v. Peterson*, 894 F. Supp. 2d 1067, 1070 (N.D. Ill. 2012) (dismissing occupational-liberty claim where complaint did not substantiate conclusory allegations that defendants' actions "seriously threaten[ed] their ability to engage in their chosen

profession"); *cf. also Struthers v. Minooka Cmty. High Sch. Dist. No. 111*, No. 14-CV-7632, 2015 WL 3815041, at *4 (N.D. Ill. June 17, 2015) (describing as conclusory plaintiff's unsupported statement that she was unable to secure employment "due in no small part to Defendants' publication . . . of the [stigmatizing] comments"); *Evans v. Chalmers*, 703 F.3d 636, 660 (4th Cir. 2012) (stating that plaintiffs failed to plausibly allege that any of defendant's allegedly defamatory statements caused the asserted due process deprivations). And although the Complaint contains detailed assertions regarding one of Messina's job applications, for a position with the Village of Prospect Heights, those allegations indicate that he was turned down for the position after "Prospect Heights conducted [a] background check and had conversations with individuals from Villa Park," **not** because Prospect Heights reviewed Taglia's blog post. *Cf. Snowden v. Adams*, 814 F. Supp. 2d 854, 872 (C.D. Ill. 2011) (observing that since evidence at summary judgment stage indicated a different reason for prospective employer's decision not to hire plaintiff, "Plaintiff did not lose an employment opportunity as a result of Defendants' public disclosure of information"). The allegations in the Complaint are thus insufficient to raise a reasonable inference that the post caused Messina to be blacklisted from employment in law enforcement.

Since Messina has once again failed to plausibly allege an occupational-liberty deprivation, Count II is dismissed in its entirety with prejudice.

**B.** **State Claims (Counts III, IV, V, and VII)**

Because Messina has failed to state a viable federal claim under § 1983, the Court declines to exercise supplemental jurisdiction over his state claims for defamation, tortious interference, intentional infliction of emotional distress, and indemnification. Accordingly, those claims are dismissed without prejudice.

* * *

For the reasons stated above, the defendants' motion to dismiss is granted. Messina's federal claims are dismissed with prejudice. The state law claims are dismissed without prejudice to Messina's right to refile his claims in state court.

Date: July 20, 2015

John J. Tharp, Jr.
United States District Judge